AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
MAY 29 2020
MITCHELL R. ELFERS
CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. 20-mr-802
THE CELLULAR TELEPHONE ASSIGNED CALL )
NUMBER (505) 337-9484 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | PWID Distribute and Distribution of Cocaine |
| 21 U.S.C. § 846 | Conspiracy to Distribute Cocaine |

The application is based on these facts:
See attached affidavit, which is incorporated by reference.

☐ Continued on the attached sheet.
☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jerrod Pelot, Task Force Officer
*Printed name and title*

Sworn to before me by telephone.

Date: May 29, 2020

_____
*Judge's signature*

City and state: Albuquerque, New Mexico

Hon. Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UNKNOWN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (505) 337-9484 | Case No. _____<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Task Force Officer Jerrod Pelot, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (505) 337-9484, with listed subscriber Mohammed ABDULWAHHAB (the "Target Phone"), whose service provider is T-Mobile Inc, a wireless telephone service provider headquartered at **4 Sylvan Way Parsippany, NJ 070546480**. The Target Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. Both attachments are attached hereto and incorporated herein.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the government currently has a separate order that complies with the requirements of the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.

3. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), and have been since May of 2016. I have been a full-time, sworn Law Enforcement Officer with the Albuquerque Police Department since 2008. I am currently assigned as a Detective with Special Investigation Division and FBI Transnational Organized Crime Task Force. My duties include the arrest and apprehension of violent/non-violent fugitives and narcotics trafficking investigations. Current and previous duties include follow-up investigations on all felony property crimes to include but not limited to: Commercial Burglary, Aggravated Burglary, Residential Burglary, Robberies and Larceny. These duties include the investigation, identification, and apprehension of commercial and residential burglary offenders and white collar crime offenders. I am trained, and have experience with, the tracking and execution of cellular communication, GPS, and cell site mapping. As a result of these

investigations, and in conjunction with receiving accredited law enforcement academic training, I have obtained and assisted in obtaining arrest and/or search warrants for people and places involved in these crimes.

4. During my tenure, I have received numerous assignments to investigate narcotics-related crimes. I have worked in an official undercover capacity to both purchase and sell several types of controlled substances. I have interviewed and utilized the services of confidential informants ("CI"), concerned citizens and crime-stopper tips. I have conducted numerous interviews of self-admitted drug users and drug dealers. I have participated in drug-related investigations utilizing various means available to law enforcement, to include: video surveillance, photography, pen registers, vehicle trackers, wiretaps, search warrants, body wires, and other physical and technological investigative means.

5. I have received hundreds of hours of advanced training and numerous hours of on-the-job experience related to the investigation of several types of crimes including, but not limited to, homicides, assaults, child abuse, weapons offenses, burglaries, various types of thefts, narcotics and narcotics-related crimes, and money laundering. I have received training related to the identification of several types of controlled substances, including marijuana, methamphetamine/amphetamine, heroin, cocaine/crack cocaine, lysergic acid diethylamide ("LSD"), gamma hydroxybutyrate ("GHB"), methylenedioxymethamphetamine ("MDMA" or ecstasy), and synthetic drugs as well as other various drugs, along with the methods of use, sales, delivery, concealment, possession and manufacture of these controlled substances. I have received training related to the interdiction of drug traffickers and smugglers, narcotics sales and distribution, detection and investigation of clandestine labs, conspiracies involving the distribution of controlled substances and how to investigate these types of crimes.

6. Through my training and experience, I am familiar with the trafficking methods used by drug traffickers as well as the terminology used. I am familiar with methods of weighing and packaging numerous types of controlled substances. Drug traffickers utilize several Points of Entry (POE) into the United States from Mexico, and travel to Albuquerque, NM. Drugs are brought to Albuquerque as a central hub to disperse large quantities deeper into the United States by way of major interstates. I have learned that in an effort to elude law enforcement and Title III intercepts, drug traffickers will often use multiple phones, communicate exclusively between pairs of phones, and change phones regularly. Drug traffickers have employed the use of aftermarket hidden compartments and natural voids within vehicles to conceal contraband and US currency to avoid law enforcement. I know drug

traffickers keep drugs and/or money in a designated place to make it easier to protect, and evade law enforcement. These locations are often referred to as "stash houses" and often their only purpose is to conceal and hide drugs, currency and other contraband.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being possession with intent to distribute cocaine and distribution of cocaine, and 21 U.S.C. § 846, that being conspiracy to possess with the intent to distribute cocaine and distribution of cocaine have been committed, are being committed, and will be committed by Mohammed ABDULWAHHAB, and persons currently unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

9. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10. The FBI is conducting a criminal investigation of Mohammed ABUDULWAHHAB and unidentified subjects regarding possible violations of 21 U.S.C. § 841(a)(1) and (b)(1)(A), that being possession with intent to distribute cocaine and distribution of cocaine, and 21 U.S.C. § 846, that being conspiracy to possess with the intent to distribute cocaine and distribution of cocaine.

11. In May of 2020, detectives from the Albuquerque Police Department (APD) contacted Federal Bureau of Investigation (FBI) Special Agents and Task Force Officers (Agents/TFOs) regarding criminal activity perpetrated by Mohammed ABDULWAHHAB in the Albuquerque Metro area. Two APD reports, described in further detail below, articulate two occasions where ABDULWAHHAB was in possession of illegal narcotics, firearms, and endangered the public. On April 19, 2020, APD officer detained ABDULWAHHAB after a caller reported him pointing an AK-47 type assault rifle at a passerby during an illegal street racing event (reference APD

3

Case #200032547). During the pat down officers located a handgun in his waistband. When asked by officers for his cellphone number during their investigation ABDULWAHHAB provided APD officers with the Target Phone number. ABDULWAHHAB was released at the scene and his vehicle sealed and towed pending further investigation. On April 23, 2020 a subsequent state search warrant issued and served on ABDULWAHHAB's vehicle and officers located a Century Arms C3902 AK-47 style pistol (serial#c39p2a05226) was located on the rear passenger seat floor board. Four black glock 10 mm magazines fully loaded were recovered from the center console. A loose 10mm live round was located in in the center console. All items were tagged as evidence.

12. On May 10, 2020, ABDULWAHHAB was arrested by APD for driving the wrong way on a sport motorcycle in the downtown district of Albuquerque. When officers attempted to execute a traffic stop, ABDUWAHHAB fled from officers on the motorcycle at dangerous speeds, and at one point, traveled at a high rate of speed down a bicycle path near the Rio Grande River almost striking several bicyclists. When ABDULWAHHAB was finally apprehended, he was in possession of a handgun and "40 grams of marijuana derived wax" (reference APD Case #200037982). When asked by officers for his cellphone number during their investigation ABDULWAHHAB provided APD officers with the Target Phone number.

13. The FBI made contact with a Confidential Source ("CS") who has close contact with ABDULWAHHAB and is familiar with his criminal activities. The CS provided information on his/her knowledge of drug-trafficking being committed by ABDULWAHHAB. Over the past year, investigators have determined the CS to be truthful and reliable by corroborating the information the CS provided. The CS is working for monetary compensation and for consideration on pending criminal charges.

14. The CS advised ABDULWAHHAB traffics large quantities of cocaine in and around the Albuquerque area and also deals in assault rifles and handguns. Investigators provided the CS a recently obtained photograph of ABDULWAHHAB and the CS positively identified the man in the picture as HABIBI JAFF. At the direction and observation of Agents/TFOs, the CS placed a phone call to ABDULWAHHAB via his (ABDULWAHHAB) Facebook Messenger account (this account was observed by Agents/TFOs and identified as "Habibi Jaff"). The CS knows ABDULWAHHAB's cell phone number to be 505-337-9484 hereinafter referred to as the "Target Phone". In this conversation, ABDULWAHHAB advised the CS, he/she could "pick up" a kilo from him and ABDULWAHHAB would introduce CS to his

4

source he identified as "the Mexicans". Based upon my training and experience the conversation was entirely about the trafficking of illegal narcotics. Furthermore, the dollar amount per kilo articulated by ABDULWAHHAB is consistent with cocaine. After the call was terminated, the CS advised Agents/TFOs that the purchase discussed was of cocaine, based upon previous conversations the CS has with ABDULWAHHAB. Agents/TFOs reviewed "Habibi Jaffs" Facebook account (https://www.facebook.com/mohamed.jaf.96) and compared the Facebook photograph posts with recent arrest photographs/records. Agents/TFOs determined "Habibi Jaff" to be Mohammed ABDULWAHHAB.

15. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

16. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Phone, including by initiating a signal to determine the location of the Target Phone on T-Mobile's network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer

connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile services, including by initiating a signal to determine the location of the Target Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times as directed by the government. The

government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Phone outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Jerrod C. Pelot
Task Force Officer (TFO)
Federal Bureau of Investigation


Sworn to before me by telephone on May 29, 2020

_____
UNITED STATES MAGISTRATE JUDGE

7

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (505) 337-9484 with listed subscriber Mohammed ABDULWAHHAB (the "Target Phone"), whose wireless service provider is T-Mobile, Inc., a company headquartered at **4 Sylvan Way**, Parsippany, NJ 07054.

2. Information about the location of the Target Phone that is within the possession, custody, or control of T-Mobile including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).